UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERRY MORTON,

                Petitioner,                Case Number 2:11-CV-14356
                                                                          Honorable Gerald E. Rosen

WILLIE SMITH,

                Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY

This matter is before the Court on Petitioner Jerry Morton's petition for a writ of habeas corpus filed under 28 U.S.C. § 2254. On May 9, 2007, Petitioner was sentenced to a term of 20-to-30 years for his Jackson Circuit Court conviction of armed robbery. MICH. COMP. LAWS § 750.529. The petition challenges this conviction on four grounds: (1) Petitioner was denied the effective assistance of counsel; (2) insufficient evidence was presented at trial to support Petitioner's conviction; (3) Petitioner was denied his right to counsel of choice; and (4) the criminal complaint was defective. The Court finds that the state court adjudication of Petitioner's claims did not run contrary to, or involve an unreasonable application of, clearly established Supreme Court law. Therefore, the petition will be denied. The Court will also deny Petitioner a certificate of appealability.

### I. Facts and Procedural History

Petitioner's conviction results from his late-night robbery of a convenience store in Jackson, Michigan. Because Petitioner's getaway driver decided not to participate in the robbery, Petitioner was caught by police standing beside a road with the proceeds of the robbery in his pocket.

At trial, Daniel Albert testified that on the evening of December 1, 2006, Petitioner called him and asked Albert to give him a ride to so he could "get some money." Albert picked up

Petitioner and another man, Anthony "T-Bone" Travis. Petitioner sat in the front passenger seat, while Travis sat behind Albert. After stopping at a house, Petitioner asked Albert to take him to a Meijer store. On the way, however, they passed Buddy's convenience store and pulled into a used car lot next to it. Petitioner got out of the car, picked up a large chunk of concrete, got back into the car, and told Albert to take him to Buddy's.

Albert parked by the side of the store. As Petitioner got out of the car with the chunk of concrete in his hand, he said: "I'm going to go get this money." Albert decided he did not want to be involved and left. Albert then dropped Travis off at another party store down the street.

Travis's trial testimony largely corroborated Albert's. Albert and Travis testified that they had not been promised anything in exchange for their testimony.

Inside the store, thirteen-year-old Autumn Taylor was helping her sister, Melissa Taylor, work at Buddy's. As the two were preparing to close the store, a man walked in. He was wearing gray sweat pants and a hoodie with the hood up. Autumn testified that she looked at the man for about ten seconds, and got "a pretty good look at" his face.

Melissa thought something was suspicious. She saw the man holding a hand behind his back. The man then announced: "Open the cashregister or I'll smash your face in."  When Melissa froze, he said: "I'm going to hit you with this rock." Melissa opened the cash register and backed up. The man grabbed cash out of the register, shoved it into his front pocket, and walked out of the store.

Melissa and Autumn locked all the doors and called the police. In court, Autumn identified Petitioner as the man she saw in the store that night. She said she was able to identify him because "I got a good look at his face and I always picture it." She explained that she sees his face in nightmares.

Later that night, police officers took Melissa to identify a man they found fitting the general description of the man she said robbed the store. The police shined a light on Petitioner's face, and she said she "knew for a fact that was him." Melissa also identified Petitioner at trial as the person who robbed the store.

The prosecutor played a videotape from the store's security camera. It pictured the robbery, including the clothing worn by the perpetrator, and the fact that he was holding a rock behind his back.

Shortly after the robbery, Deputy James Moore saw a man matching the suspect's description walking near an entrance ramp to the I-94 expressway. Moore stopped and asked the man for identification. After he gave the deputy his identification, Moore patted the man down to make sure he did not have any weapons. In the man's left front pants pocket, Moore discovered a large amount of cash, arranged by denomination. Petitioner was placed in a patrol car, and police subsequently had Melissa Taylor identify him.

Michigan State Troopers Frank Carpenter and Allen Fitzpatrick interviewed Petitioner in their patrol car after Fitzpatrick read the suspect his *Miranda* rights. Fitzpatrick testified that Petitioner appeared to be intoxicated, but it appeared he understood his rights. Petitioner told them that he had been at the Colonial Inn playing dice. On the way to the jail, Petitioner asked the troopers if they wanted to know the other people that were involved in the robbery. He then gave them Travis's phone number. The trooper had Petitioner call Travis on a speaker phone and ask him about the incident. Travis said Albert dropped him off a short distance from the Buddy's.

Petitioner was upset at Albert, and he told the troopers: "Fuck him, forget him, he left me." Petitioner then told them where Albert lived. Petitioner led them to Albert's house, and pointed out

the car he and the other two men had been in. Later, the troopers found Albert and Travis and took statements from them. Believing Petitioner "had reached the end of his rope," Fitzpatrick testified Petitioner said: "Just take me to jail. I'm guilty. I did it."

After the prosecution presented several witnesses, Petitioner requested the appointment of a new attorney. The trial court denied the request, stating that Petitioner was already on his second appointed attorney and that his current counsel was very experienced and was effectively trying the case. Then, after the prosecution rested, Petitioner notified the trial court that he wanted to take over his own defense and have his attorney serve as standby counsel. After a lengthy exchange, including the trial court warning Petitioner of the dangers of self-representation, Petitioner indicated that he did not want to represent himself. Trial proceeded with Petitioner's appointed counsel.

Petitioner testified in his own defense. He stated that on the date in question he had just received his pay check from Ponderosa Steak House. He admitted that he was with Travis and Albert, and testified that they went to a house to buy drugs. After they purchased some crack cocaine, the three went to the Colonial Inn and shot dice in a hotel room with six or seven people. At some point Travis and Albert left, and Petitioner went out to look for the two men and saw the car was gone. He testified that he started walking down the street when he heard the police car pull up near him. A state police car soon came, and he was arrested and placed in the back of the car. Soon thereafter a light was shined in his face. He testified that he never told the police he robbed Buddy's.     After arguments, instructions, and deliberations, the jury found Petitioner guilty. The trial court sentenced him as a third-time habitual felony offender to 20-to-30 years' imprisonment.

Petitioner appealed by right, raising what now form his first and second habeas claims. On November 25, 2008, the Michigan Court of Appeals affirmed both the conviction and sentence.

-4-

*People v. Morton*, No. 278833 (Mich. Ct. App. Nov. 25, 2008). Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims. The Michigan Supreme Court denied leave to appeal. *People v. Morton*, 483 Mich. 979 (2009)(table).

Petitioner thereafter filed a motion for relief from judgment, raising what now form his third and fourth habeas claims. On November 1, 2010, the trial court denied it because Petitioner had failed to demonstrate "good cause" under Michigan Court Rule 6.508(D)(3), for failing to have raised the claims during his direct appeal.

Petitioner appealed this decision through the Michigan appellate courts, but both courts denied him relief under Rule 6.508(D). *People v. Morton*, No. 302179 (Mich. Ct. App. March 24, 2011); *People v. Morton*, 489 Mich. 992 (2011)(table).

Petitioner then filed his application for a writ of habeas corpus in this Court, asserting the following claims:

I. Petitioner was denied the effective assistance of trial counsel.

> A. Counsel failed to move to suppress the statements Petitioner made to police on the grounds that he did not voluntarily waive his right to self-incrimination.
>
> B. Counsel failed to object to the in-court identification of Petitioner by the victims.
>
> C. Counsel failed to object to the scoring of the sentencing guidelines.

II. Insufficient evidence was presented at trial to sustain Petitioner's conviction.

III. Petitioner was denied his right to substitute counsel.

IV. The criminal complaint lacked sufficient probable cause to allow the state district court hold the preliminary examination.

## II. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)((*quoting Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A]

state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)(*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (*citing Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. at 786.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (*citing Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*, at 786-787.

### III. Analysis

**A. Ineffective Assistance of Counsel**

Petitioner's first claims that his trial counsel was ineffective. He asserts that his counsel: (1) failed to move to suppress statements Petitioner made to police; (2) failed to object to the in-court identification testimony of the two eye witnesses; and (3) failed to object to the scoring of the sentencing guidelines.

To establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance." *Id.* at 689. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687.

To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A court's review of counsel's performance must be "highly deferential." *Id.* at 689. Habeas relief may be granted only if the state-court decision unreasonably applied the standard for evaluating ineffective-assistance-of-counsel claims established by *Strickland*. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable — a substantially higher threshold." *Id.* at 123 (internal quotation omitted).

**1. Petitioner's Statements to Police**

Petitioner first claims that his counsel was ineffective for failing to move to suppress his statements to police. He asserts that the testimony at trial indicated that he was intoxicated when he made his statements, and therefore he could not have voluntarily waived his right against self-incrimination.

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the United States Supreme Court held that statements made during a custodial interrogation of a suspect are inadmissible at trial unless the defendant has voluntarily and knowingly waived certain rights prior to making those statements. A defendant's waiver of his *Miranda* rights must be found, based upon the totality of the circumstances, to be voluntary, knowing, and intelligent. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). Courts have generally found that no single factor of the accused individual's characteristics is dispositive when deciding whether a valid waiver of rights was executed. While intoxication is a factor in determining the voluntariness of a waiver, a defendant can voluntarily waive his *Miranda* rights even when intoxicated. *See United States v. Montgomery*, 621 F.3d 568, 573 (6th Cir. 2010) (citing *United States v. Scheets*, 188 F.3d 829, 839-40 (7th Cir. 1999) ("The mere fact that an individual is intoxicated does not render consent involuntary. . . . It is simply another factor to be taken in consideration when assessing the totality of the circumstances."); and *United States v. Gay*, 774 F.2d 368, 377 (10th Cir. 1985) (holding that defendant "can be too intoxicated to operate a motor vehicle, but rational enough to [consent]")).

The only evidence of intoxication is the testimony of one of the officers who transported Petitioner to the police station. Michigan State Police Trooper Fitzpatrick testified that he smelled alcohol on Petitioner and thought Petitioner was intoxicated. Fitzpatrick also testified that Petitioner

appeared to understand his *Miranda* rights and was not "falling down drunk" but appeared to have "a good buzz." Ironically, Petitioner testified at trial that he never drinks and that Fitzpatrick lied when he testified that Petitioner was intoxicated.

There was no evidence presented at trial, and there has been no evidentiary proffer made here, suggesting that trial counsel had a factual basis for claiming that Petitioner was too intoxicated to waive his rights. In fact, a motion to suppress would likely have been futile given Petitioner's own testimony at trial that he was not intoxicated. Accordingly, the state court rejection of this claim during Petitioner's direct appeal was not objectively unreasonable.

**2. In-court Identification Testimony**

Petitioner next claims that his trial counsel should have objected to the in-court identification testimony of the two eyewitnesses. Specifically, Petitioner asserts that the one-on-one show-up procedure used on the night of the robbery constituted an unduly suggestive identification procedure that tainted the in-court identification at trial.

A defendant's right to due process includes the right not to be the object of suggestive police identification procedures that make an identification unreliable. *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977). An identification procedure may be deemed unduly or unnecessarily suggestive, if it is based on police procedures that create "a very substantial likelihood of irreparable misidentification." *Perry v. New Hampshire*, 132 S. Ct. 716, 718 (2012) (*quoting Simmons v. United States*, 390 U.S. 377, 384 (1968)). As the Supreme Court noted, one-on-one show-up identification procedures have been "widely condemned" because they are inherently suggestive. *Stovall v. Denno*, 388 U.S. 293, 302 (1967), *overruled on other grounds by Griffith v. Kentucky*, 479 U.S. 314 (1987).

A suggestive identification procedure may be warranted, however, in the face of exigent circumstances, such as in the hospital where a victim was believed to be dying, or at the scene of a crime where police officers are deciding whom to arrest and whom to release. *See, e.g., Stovall*, 388 U.S. at 302 (finding a one-on-one hospital show-up to be "imperative" under the totality of the circumstances); *Simmons*, 390 U.S. at 384 (suggestive identifications may not be unduly suggestive when they happen immediately following a crime, because they may be "sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them"); *United States. v. Bautista*, 23 F.3d 726, 730 (2d Cir. 1994) ("[A] prompt showing of a detained suspect at the scene of arrest has a very valid function: to prevent the mistaken arrest of innocent persons." (citations omitted)). In such cases, courts have found that the procedures, although suggestive, were not unnecessarily or unduly suggestive. If a court finds that the procedure was not unnecessarily suggestive, the identification testimony may be admitted into evidence, where the jury can weigh its credibility. *Perry*, 132 S. Ct. at 725; *see also Foster v. California*, 394 U.S. 440, 442 n.2 (1969) ("The reliability of properly admitted eyewitness identification, like the credibility of the other parts of the prosecution's case is a matter for the jury.")

Petitioner argues that the identification procedure was unduly suggestive because it was a one-on-one show-up in which Petitioner was seated in the back of a patrol car with a spotlight shining in his face. However, there were exigent circumstances for the show-up procedure based on the close proximity to the time and location of the robbery. Although the one-on-one show-up was suggestive, it was not unnecessarily suggestive because it was justified by these exigent circumstances. The identification took place soon after the commission of the crime and in close

proximity to the store. Petitioner matched the general description of the perpetrator and was in possession of cash stacked in order of denomination, suggesting it might have been taken from a register. Given these circumstances, the arresting officers were justified in seeking confirmation of whether they had arrested a likely suspect, in order to avoid arresting an innocent person. *See, e.g., Brisco v. Ercole*, 565 F.3d 80, 91 (2d Cir. 2009) ("[W]e have instructed that where an officer has or should have doubts whether a detained suspect is in fact the person sought, the officer must make immediate reasonable efforts to confirm the suspect's identity, and we have held that identification evidence from show-ups held in close temporal and geographic proximity to the crime scene may be admitted." (internal citations and quotations omitted)).

Accordingly, counsel was not ineffective for failing to object to the in-court identification of the eyewitnesses. The objection would have been denied as meritless.

### 3. Scoring of Sentencing Guidelines

Petitioner asserts that his counsel was ineffective for failing to object to the scoring of the sentencing guidelines. Particularly, Petitioner asserts that his counsel should have challenged the scoring of Offense Variable 9, which relates to the number of people put in danger.

Petitioner is unable to show that he was prejudiced by counsel's failure to object to the scoring of this variable. The Court notes that the Michigan Court of Appeals ruled that Offense Variable 9 of the Michigan Sentencing Guidelines was correctly scored. *People v. Morton*, No. 278833, *5 (Mich. Ct. App. Nov. 25, 2008). In light of this decision, it is apparent that any objection to the scoring of the sentencing guidelines would have been futile and counsel was not ineffective for failing to do so. *See Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000).

Accordingly, Petitioner is not entitled to habeas relief on any of his claims of ineffective assistance of counsel.

**B.  Sufficiency of the Evidence**

Petitioner next asserts that there was insufficient evidence presented at trial to support his conviction for armed robbery because the chunk of concrete or rock he used to threaten the clerk does not constitute a dangerous weapon under state law.

"[T]he Due Process Clause every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On direct review, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (*quoting Jackson*, 443 U.S. at 324 n.16).

"Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (*citing Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009)). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205, (*citing Jackson*, 443 U.S. at 319). Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the

state appellate court's sufficiency determination as long as it is not unreasonable." *Id*.

Armed robbery under Michigan law is a statutory offense. The applicable statute reads:

A person who engages in conduct proscribed under section 530 [which defines robbery as a larceny by means of an assault upon the victim] and who in the course of engaging in that conduct, possesses a dangerous weapon or an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon, or who represents orally or otherwise that he or she is in possession of a dangerous weapon, is guilty of a felony punishable by imprisonment for life or for any term of years.

MICH. COMP. LAWS § 750.529 (emphasis added).

Under this statute, the prosecutor must prove two elements beyond a reasonable doubt: (1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon. *People v. Chambers*, 277 Mich. App. 1, 7 (2007).

The Michigan Court of Appeals reasonably concluded that sufficient evidence was presented at trial to prove beyond a reasonable doubt that the rock or chunk of concrete that Petitioner threatened the cashier with was a dangerous weapon. *People v. Morton*, No. 278833, *4 (Mich. Ct. App. Nov. 25, 2008). The evidence at trial indicated that Petitioner brandished a large chunk of concrete or a rock and threatened to smash her face with it. A surveillance tape from the store depicted the perpetrator holding the object. Finally, Albert testified that he saw Petitioner pick up a 6"x6" rock. Viewed through the *Jackson* standard, this evidence was sufficient to establish that

Petitioner "represented orally or otherwise that he or she was in possession of a dangerous weapon." *Chambers, supra*. Accordingly, the state court's adjudication of Petitioner's sufficiency of the evidence claim was not objectively unreasonable. Petitioner has not demonstrated entitlement to habeas relief on this claim.

### C. Counsel of Choice

Petitioner next asserts that he was denied his right to counsel of choice when the trial court denied his mid-trial request for substitute counsel.

The Sixth Amendment provides, in relevant part, that "[i]n all criminal prosecutions the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The Sixth Amendment does not guarantee, however, a "meaningful relationship" between counsel and a defendant. *Morris v. Slappy*, 461 U.S. 1, 13-14 (1983).

The right to counsel encompasses the right to counsel of choice, but that right is generally cognizable only to the extent defendant can retain counsel with private funds; an indigent defendant does not have an absolute right to choose appointed counsel. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 151-52 (2006) (citations omitted). The right to counsel of one's choice is not absolute, and "is circumscribed in several important respects." *Wheat v. United States*, 486 U.S. 153, 159 (1988). The United States Supreme Court has recognized "a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness . . . and against the demands of its calendar." *Gonzalez-Lopez*, 548 U.S. at 152 (*citing Wheat*, 486 U.S. at 163-64; *Morris*, 461 U.S. at 11-12). Furthermore, "a court must beware that a demand for counsel may be utilized as a way to delay proceedings or trifle with the court." *United States v. Krzyske*, 836 F.2d 1013, 1017 (6th Cir.

1988) (citations omitted). In sum, "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat*, 486 U.S. at 159 (*citing Morris*, 461 U.S. at 13-14; *Jones v. Barnes*, 463 U.S. 745 (1983)).

Because an indigent defendant has no absolute right to appointed counsel of choice and because the focus of the Sixth Amendment inquiry is on effective advocacy, a criminal defendant who is dissatisfied with appointed counsel must show "good cause" to warrant the substitution of counsel. *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990) (footnote and citation omitted). Good cause includes "a conflict of interest, a complete breakdown in communication or an irreconcilable conflict with [an] attorney." *Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985) (citations omitted). The decision regarding whether to appoint new counsel at a defendant's request is committed to the sound discretion of the trial court. *United States v. Trujillo*, 376 F.3d 593, 606 (6th Cir. 2004) (*citing United States v. White*, 451 F.2d 1225, 1226 (6th Cir. 1971)).

The trial court did not deny Petitioner's right to counsel of choice. Petitioner waited until his trial was well under way before requesting substitute counsel. A request for substitute counsel on the day of trial is untimely. *See, e.g., United States v. Trujillo*, 376 F.3d 593, 606-07 (6th Cir. 2004). The trial court found that Petitioner's appointed counsel was experienced and had adequately represented him thus far at trial. This Court's review of the record confirms that Petitioner's appointed trial attorney was well-prepared and was effectively presenting Petitioner's defense. Accordingly, Petitioner failed to show "good cause" to warrant substitution of counsel. Petitioner has therefore failed to demonstrate entitlement to habeas relief based on this claim.

**D. Sufficiency of Charging Document**

Finally, Petitioner asserts that the criminal complaint was insufficient to give jurisdiction to the state district court to initiate criminal proceedings against him.

While the Fourth Amendment requires probable cause to support an arrest, the propriety of an arrest is irrelevant to the constitutional validity of any subsequent conviction. "An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution." *United States v. Crews*, 445 U.S. 463, 474 (1980). The Supreme Court has made it clear that the presence or absence of probable cause sufficient to arrest or detain a person is irrelevant to the ultimate validity of an ensuing conviction:

> Nor do we retreat from the established rule that illegal arrest or detention does not void a subsequent conviction. *Frisbie v. Collins*, 342 U.S. 519 (1952); *Ker v. Illinois*, 119 U.S. 436 (1886). Thus, as the Court of Appeals noted below, although a suspect who is presently detained may challenge the probable cause for that confinement, a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause.

*Gerstein v. Pugh*, 420 U.S. 103, 119 (1975); *accord United States v. Saussy*, 802 F.2d 849, 851-52 (6th Cir. 1986) (absence of probable cause to support issuance of warrant does not undermine conviction). Petitioner's present custody with the Michigan Department of Corrections is the result of his conviction, and the presence or absence of probable cause to support the charging document is irrelevant to the continuing validity of that custody.

### IV. Conclusion

Before Petitioner may appeal this decision, a certificate of appealability ("COA") must issue. See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal court rejects a habeas claim on the merits, the substantial showing threshold is met if the

petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id*. at 336-37. Petitioner has not made a substantial showing of the denial of a constitutional right as to his habeas claims. Accordingly, a certificate of appealability is **DENIED**.

## V. Order

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

                    s/Gerald E. Rosen
                    Chief Judge, United States District Court

Dated: April 22, 2013

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 22, 2013, by electronic and/or ordinary mail.

                    s/Julie Owens
                    Case Manager, (313) 234-5135